UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RONNELL DAVIS, | Case No. 2:19-cv-01976-JAM-JDP (PC) |
| Plaintiff, | FINDINGS AND RECOMMENDATIONS THAT DEFENDANTS' MOTION FOR SUMMARY JUDGMENT BE DENIED |
| v. | |
| B. HARRIS, *et al.*, | OBJECTIONS DUE IN 14 DAYS |
| Defendant. | ECF No. 30 |

Plaintiff, a diabetic inmate with a prescription for a daily diabetic snack, filed a grievance indicating that he occasionally did not receive his snack. He alleges that after he filed his grievance, two psychiatric technicians—defendants Harris and Hunter—withheld his snack three days in a row in violation of his First and Eighth Amendment rights. Defendants move for summary judgment, arguing that they were not responsible for giving him his snack and that they took no action against him in response to his grievance. Additionally, they claim that they are entitled to qualified immunity.

**Summary Judgment Standard**

Summary judgment is appropriate where there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Washington*

1

1  *Mutual Inc. v. United States*, 636 F.3d 1207, 1216 (9th Cir. 2011).  An issue of fact is genuine
2  only if there is sufficient evidence for a reasonable fact finder to find for the non-moving party,
3  while a fact is material if it "might affect the outcome of the suit under the governing law."
4  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Wool v. Tandem Computs., Inc.*, 818
5  F.2d 1422, 1436 (9th Cir. 1987).

6  Rule 56 allows a court to grant summary adjudication, also known as partial summary
7  judgment, when there is no genuine issue of material fact as to a claim or a portion of that claim.
8  *See* Fed. R. Civ. P. 56(a); *Lies v. Farrell Lines, Inc.*, 641 F.2d 765, 769 n.3 (9th Cir. 1981) ("Rule
9  56 authorizes a summary adjudication that will often fall short of a final determination, even of a
10 single claim . . . .") (internal quotation marks and citation omitted).  The same standards apply
11 both to a motion for summary judgment and a motion for summary adjudication.  *See* Fed. R. Civ.
12 P. 56 (a), (c); *Mora v. Chem-Tronics*, 16 F. Supp. 2d 1192, 1200 (S.D. Cal. 1998).

13 Each party's position must be supported by (1) citations to particular portions of materials
14 in the record, including but not limited to depositions, documents, declarations, or discovery; or
15 (2) argument showing either that the materials cited do not establish the presence or absence of a
16 genuine factual dispute or that the opposing party cannot produce admissible evidence to support
17 its position.  *See* Fed. R. Civ. P. 56(c)(1) (quotation marks omitted).  The court may consider
18 materials in the record not cited by the parties, but it is not required to do so.  *See* Fed. R. Civ. P.
19 56(c)(3); *Carmen v. San Francisco Unified Sch. Dist.*, 237 F.3d 1026, 1031 (9th Cir. 2001); *see*
20 *also Simmons v. Navajo Cnty., Ariz.*, 609 F.3d 1011, 1017 (9th Cir. 2010).

21 "The moving party initially bears the burden of proving the absence of a genuine issue of
22 material fact."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  To meet its burden, "the
23 moving party must either produce evidence negating an essential element of the nonmoving
24 party's claim or defense or show that the nonmoving party does not have enough evidence of an
25 essential element to carry its ultimate burden of persuasion at trial."  *Nissan Fire & Marine Ins.*
26 *Co., Ltd. v. Fritz Cos., Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000).  If the moving party meets this
27 initial burden, the burden then shifts to the non-moving party "to designate specific facts
28 demonstrating the existence of genuine issues for trial."  *In re Oracle Corp. Sec. Litig.*, 627 F.3d

376, 387 (citing *Celotex Corp.,* 477 U.S. at 323).  The non-moving party must "show more than the mere existence of a scintilla of evidence." *Id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)).  However, the non-moving party is not required to establish a material issue of fact conclusively in its favor; it is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Assoc.*, 809 F.2d 626, 630 (9th Cir. 1987).

The court must apply standards consistent with Rule 56 to determine whether the moving party has demonstrated there to be no genuine issue of material fact and that judgment is appropriate as a matter of law.  *See Henry v. Gill Indus., Inc.*, 983 F.2d 943, 950 (9th Cir. 1993).  "[A] court ruling on a motion for summary judgment may not engage in credibility determinations or the weighing of evidence." *Manley v. Rowley,* 847 F.3d 705, 711 (9th Cir. 2017) (citation omitted).  The evidence must be viewed "in the light most favorable to the nonmoving party" and "all justifiable inferences" must be drawn in favor of the nonmoving party. *Orr v. Bank of America, NT & SA*, 285 F.3d 764, 772 (9th Cir. 2002); *Addisu v. Fred Meyer, Inc.*, 198 F.3d 1130, 1134 (9th Cir. 2000).

**Background**

To help regulate this blood sugar, plaintiff has a doctor's order for a diabetic snack, consisting of either two packages of crackers or one package of crackers and one piece of fresh fruit.  ECF No. 38 at 47, 60.  The order neither specifies who is responsible for distributing the snack nor whether it is to be given once a day or once in the morning and once in the evening.  *Id.* at 47.  The California Correctional Health Care Services Operations Manual states that diabetic snacks "shall be stored and distributed by institution food services and custody staff . . . ."  ECF No. 30-3 at 206-09.

On August 14, 2017, plaintiff asked defendant Hunter for nursing staff to provide his diabetic snack once a day instead of custody staff providing it once a week.  ECF No. 38 at 51.  Hunter responded, "I will inform nursing staff that crackers should only be given once a day and not once weekly to avoid any future issues."  *Id*.  Two days later, on August 16, plaintiff filed a grievance stating that nursing staff had not provided his diabetic snack after his evening injection

1  on at least three occasions. *Id*. at 2, 76. The next day, August 17, defendant Harris gave plaintiff
2  his evening insulin and said, "you filed a [grievance] about the snacks now its an issue," then told
3  plaintiff that the diabetic snacks were not available yet, but that he would bring them to plaintiff
4  later. *Id.* at 2. Later that day, Harris came to plaintiff's cell and asked him to sign a piece of
5  paper. *Id*. at 3. Plaintiff asked what the paper was for, and Harris responded that it was for a
6  week's supply of fourteen crackers. *Id*. Plaintiff refused to sign it and told Harris that he is
7  supposed to receive two crackers per day, not a week's worth of crackers. *Id*. Harris gave
8  plaintiff one package of crackers and left. *Id*.
9        The next day, Hunter administered plaintiff's evening insulin and then handed him one
10  package of crackers. *Id*. He told her that he needed two packages in case his blood sugar
11  dropped. *Id*. She smiled and told the escorting officer to take him away. *Id*. The following day,
12  August 19, Hunter repeated this exchange: she administered his evening insulin and gave him one
13  package of crackers; when he told her that he needed two packages, she smiled and told the
14  escorting officer to take him away. *Id*. That day, Hunter noted in plaintiff's medical record that
15  she gave him one package of crackers during the evening diabetic line and that he claimed he had
16  not received his package of crackers earlier in the day. ECF No. 30-3 at 196. She also noted that
17  plaintiff's medical order stated that he was to be given one package of crackers twice a day—
18  though defendants have not provided a copy of this order and it seems to be contradicted by an
19  August 14 note, in which Hunter stated that she had directed nursing staff to deliver the snack
20  once a day. *Id*. Finally, she noted that "[p]er diabetic cracker delivery receipt for 8/18/2017,
21  [plaintiff] refused to accept and refused to sign the cracker delivery." *Id*.
22        In the early hours of August 20, plaintiff lost consciousness. *Id*. at 4. Emergency
23  personnel responded and gave him two glucose tubes and two sugar tablets to revive him. *Id*. On
24  August 21, plaintiff informed nurse J. Maalihan that nursing staff had not been providing the
25  diabetic snacks as ordered by his doctor. ECF No. 30-3 at 200. Maalihan wrote in plaintiff's
26  medical record that he "advised our [psychiatric technics] not to give [plaintiff] the rest of the
27  crackers for the rest of the week. Instead give [plaintiff] 2 crackers at night after diabetic checks
28  or after insulin was received." *Id*. The nurse also wrote in plaintiff's medical record that a

4

"[f]inger stick shows no hypoglycemic episode since he got here" on August 4, 2017.  *Id.*

## Discussion

### A.     Eighth Amendment Deliberate Indifference

"[T]o maintain an Eighth Amendment claim based on prison medical treatment, an inmate must show 'deliberate indifference to serious medical needs.'" *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)).  The two-part test for deliberate indifference requires the plaintiff to show (1) "'a serious medical need' by demonstrating that 'failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain,'" and (2) that "the defendant's response to the need was deliberately indifferent." *Jett*, 439 F.3d at 1096 (quoting *McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir. 1992)).  "This second prong—defendant's response to the need was deliberately indifferent—is satisfied by showing (a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference." *Id*. (citing *McGuckin*, 974 F.2d at 1060).  Indifference may be manifest "when prison officials deny, delay or intentionally interfere with medical treatment, or it may be shown by the way in which prison physicians provide medical care." *Id*.  When a prisoner alleges a delay in receiving medical treatment, the delay must have led to further harm for the prisoner to make a claim of deliberate indifference to serious medical needs. *See McGuckin*, 974 F.2d at 1060 (citing *Shapely v. Nevada Bd. of State Prison Comm'rs*, 766 F.2d 404, 407 (9th Cir. 1985)).

"Deliberate indifference is a high legal standard." *Toguchi v. Chung*, 391 F.3d 1051, 1060 (9th Cir. 2004).  "Under this standard, the prison official must not only 'be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists,' but that person 'must also draw the inference.'" *Id*. at 1057 (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)).  "If a prison official should have been aware of the risk, but was not, then the official has not violated the Eighth Amendment, no matter how severe the risk." *Id*. (quoting *Gibson v. Cnty. of Washoe*, 290 F.3d 1175, 1188 (9th Cir. 2002)).  "A showing of medical malpractice or negligence is insufficient to establish a constitutional deprivation under the Eighth Amendment." *Id*. at 1060.  "[E]ven gross negligence is insufficient to establish a constitutional violation." *Id*.

5

1  (citing *Wood v. Housewright*, 900 F.2d 1332, 1334 (9th Cir. 1990)).  Additionally, a difference of
2  opinion between an inmate and prison medical personnel—or between medical professionals—on
3  appropriate medical diagnosis and treatment is not enough to establish a deliberate indifference
4  claim.  *See Toguchi*, 391 F.3d at 1058; *Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989).

5        There is no dispute that plaintiff's diabetes is a serious medical need.  *See Lolli v. Cty. of
6  Orange*, 351 F.3d 410, 419-420 (9th Cir. 2003).  The issue is whether defendants were
7  deliberately indifferent to that need.  To be deliberately indifferent, there must be a purposeful act
8  or failure to act on the part of the defendant and a resulting harm.  *See McGuckin*, 974 F.2d at
9  1060 (citing *Shapely*, 766 F.2d at 407).

10        Defendants argue that they could not have been deliberately indifferent because they, as
11  nursing staff, were not responsible for distributing diabetic snacks.  ECF No. 30-2 at 7.  However,
12  there is evidence demonstrating that nursing staff, including defendants, distributed snacks to
13  plaintiff and other inmates.  ECF No. 30-3 at 196, 200; *see* ECF No. 38 at 2-3, 51, 85 (declaration
14  of Eduardo Franco, another diabetic inmate, who states that his diabetic snacks were always
15  distributed by nursing staff).  Considering the foregoing, defendants have not demonstrated the
16  absence of a genuine dispute as to whether they, as nursing staff, were responsible for distributing
17  diabetic snacks.

18        Nevertheless, even if defendants were responsible for delivering the snacks on some
19  occasions, deliberate indifference requires more than mere negligence or malpractice: plaintiff
20  must provide evidence indicating that defendants acted in deliberate disregard of a substantial risk
21  of serious harm of which they were personally aware.  *See Toguchi*, 391 F.3d at 1057-60.

22        On August 14, Hunter wrote in plaintiff's medical record that nursing staff was to give
23  him diabetic crackers once a day.  Then, Harris told plaintiff that his diabetic snacks were an issue
24  because of his grievance and gave him only one package of crackers—half the amount plaintiff
25  should have received.  Plaintiff told Harris that he needed two packages of crackers.  The
26  evidence indicates that Harris was informed by both Hunter and plaintiff that plaintiff was
27  supposed to receive two packages of crackers once a day, and that Harris deliberately ignored
28  those instructions.  The same is true for Hunter, since she personally wrote that plaintiff was

6

supposed to receive two packages of crackers once a day and then provided half that amount on two consecutive days. Accordingly, there is a genuine dispute as to whether defendants were deliberate indifferent to plaintiff's serious medical needs.

Defendants also argue that, even assuming plaintiff missed his diabetic snack, his medical records establish that he was not harmed. ECF No. 30-2 at 13. Records from August 17, 2017, show that plaintiff's blood sugar had "been very good" over the prior two weeks, and a treatment note from August 21, 2017, states that "[f]inger stick shows no hypoglycemic episode since he got here." ECF No. 30-3 at 200. However, plaintiff states in a sworn declaration that in the early hours of August 20, 2017, he lost consciousness and was revived only after medical personnel gave him two glucose tubes and two sugar tablets. ECF No. 38 at 4. And while plaintiff is not a medical doctor and is not qualified to testify to medical determinations, he can describe his symptoms. *See S. Cal. Hous. Rts. Ctr. v. Los Feliz Towers Homeowners Ass'n*, 426 F. Supp. 2d 1061, 1070 (C.D. Cal. 2005) (observing that a declarant has personal knowledge of his or her own symptoms). This evidence, while not overwhelming, raises a genuine dispute as to whether he sustained an injury.

### B.     First Amendment Retaliation Claim

The First Amendment guarantees prisoners the right to file prison grievances and to bring civil rights suits in court. *See Rhodes v. Robinson*, 408 F.3d 559, 567 (9th Cir. 2005). A prison official who retaliates against an inmate for these protected activities violates the First Amendment. *See, e.g.*, *Schroeder v. McDonald*, 55 F.3d 454, 461 (9th Cir. 1995). To succeed on a First Amendment retaliation claim, a plaintiff must show that a state actor took an adverse action against him because of his protected conduct, that such action chilled his exercise of his First Amendment rights, and that the action did not reasonably advance a legitimate correctional goal. *See Rhodes*, 408 F.3d at 567-68. A plaintiff can support a claim of retaliation with evidence of the defendant's knowledge of the protected activity, their conduct and statements, and the timing of the allegedly retaliatory act. *See Pratt v. Rowland*, 65 F.3d 802, 807 (9th Cir.1995) ("[T]iming can properly be considered as circumstantial evidence of retaliatory intent."); *Bruce v. Ylst*, 351 F.3d 1283, 1289 (9th Cir. 2003) (statements and suspect timing raised triable issue of

1 fact regarding whether the defendants' motive behind the plaintiff's gang validation was
2 retaliatory).

3      Plaintiff engaged in protected activity when he filed his grievance on August 16. *See*
4 *Watison v. Carter*, 668 F.3d 1108, 1114 (9th Cir. 2012). Harris knew about plaintiff's grievance
5 and told him, "you filed a [grievance] about the snacks now its an issue." ECF No. 38 at 2. The
6 timing of this statement—the day after the grievance was submitted—in conjunction with an
7 immediate action of plaintiff being denied his full diabetic snack, is sufficient to create a genuine
8 dispute as to whether Harris engaged in a retaliatory action.[1] However, plaintiff has presented no
9 evidence that Hunter knew of his protected activity. I therefore recommend summary judgment
10 be granted for Hunter on plaintiff's retaliation claim.[2]

11     **C.**    **Qualified Immunity**

12      Defendants also claim that they are entitled to qualified immunity. ECF No. 30 at 13. In
13 assessing whether qualified immunity attaches, a court asks "two questions: (1) whether the facts,
14 taken in the light most favorable to the non-moving party, show that the officials' conduct
15 violated a constitutional right, and (2) whether the law at the time of the challenged conduct
16 clearly established that the conduct was unlawful." *Felarca v. Birgeneau*, 891 F.3d 809, 815 (9th
17 Cir. 2018). "To be clearly established, a legal principle must have a sufficiently clear foundation
18 in then-existing precedent," as shown in "controlling authority or a robust consensus of cases of
19 persuasive authority." *Dist. of Columbia v. Wesby*, 138 S. Ct. 577, 589-90 (2018). Because, as
20 discussed above, there is a genuine dispute as to whether defendants violated plaintiff's Eighth
21 Amendment rights, I turn to whether the right at issue was clearly established at the time.

22      Viewing the facts in the light most favorable to plaintiff, he has shown that defendants
23 deliberately denied him a medically necessary diet in contravention of a prescription from his
24 doctor. It has been clearly established for decades that the Eighth Amendment is violated when
25 officials deliberately deny medically necessary treatment, including medical diets for prisoners

---

[1] As previously noted, plaintiff's evidence shows that he only received half of his snacks on the three days immediately after he submitted his grievance.

[2] Because I recommend granting summary judgment for Hunter on plaintiff's retaliation claim, I do not address whether she is entitled to qualified immunity on that claim.

with diabetes. *See Wakefield v. Thompson*, 177 F.3d 1160, 1164 (9th Cir.1999) (finding that the denial of prescription medicine constituted deliberate indifference to a prisoner's serious medical needs); *Lolli v. Cty. of Orange*, 351 F.3d 410, 419-420 (9th Cir. 2003) (holding that deliberate indifference to an "objectively, sufficiently serious risk of harm" may be shown when an official intentionally "[l]eav[es] a diabetic . . . without proper food or insulin when it is needed") (internal quotation marks omitted). Accordingly, I find that defendants are not entitled to qualified immunity on plaintiff's claim of deliberate indifference.

Harris argues that he is entitled to qualified immunity on plaintiff's retaliation claim. As plaintiff has raised a genuine issue of material fact as to whether the first question might be answered in his favor, I now address whether the law was clearly established at the time. It was clearly established in 2016 that retaliating against a prisoner for filing a grievance violates the First Amendment, *see Rhodes*, 408 F.3d at 568, and that an adverse action can be constituted by withholding doctor-prescribed treatment, *see Wakefield*, 177 F.3d at 1164. Thus, I find that Harris is not entitled to qualified immunity on plaintiff's retaliation claim.

Accordingly, it is hereby RECOMMENDED that defendants' motion for summary judgment, ECF No. 30, be granted as to plaintiff's claim of retaliation against defendant Hunter and denied as to all remaining claims.

I submit these findings and recommendations to the district judge under 28 U.S.C. § 636(b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California. The parties may, within 14 days of the service of these findings and recommendations, file written objections with the court. Such objections should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The district judge will review the findings and recommendations under 28 U.S.C. § 636(b)(1)(C).

IT IS SO ORDERED.

Dated: February 25, 2022

JEREMY D. PETERSON
UNITED STATES MAGISTRATE JUDGE

10